Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RODRIGO CHAPA, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| WELBILT, INC., CYNTHIA M. EGNOTOVICH, DINO J. BIANCO, JOAN K. CHOW, JANICE L. FIELDS, BRIAN R. GAMACHE, WILLIAM C. JOHNSON, and ANDREW LANGHAM, | |
| Defendants. | |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Rodrigo Chapa ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against Welbilt, Inc. ("Welbilt" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection

1

with the proposed acquisition (the "Proposed Transaction") of Welbilt by The Middleby Corporation ("Middleby") and its subsidiaries, Middleby Marshall Inc. ("Acquiror") and Mosaic Merger Sub, Inc. ("Merger Sub").

**JURISDICTION AND VENUE**

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in this District through the sale of its products and/or services.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Welbilt common stock.

7.      Defendant Welbilt designs, manufactures, and supplies foodservice equipment for commercial foodservice market worldwide. The Company is incorporated in Delaware. The

2

Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol, "WBT."

8.　　Defendant Cynthia M. Egnotovich ("Egnotovich") is Chairperson of the Board of the Company.

9.　　Defendant Dino J. Bianco ("Bianco") is a director of the Company.

10.　　Defendant Joan K. Chow ("Chow") is a director of the Company.

11.　　Defendant Janice L. Fields ("Fields") is a director of the Company.

12.　　Defendant Brian R. Gamache ("Gamache") is a director of the Company.

13.　　Defendant William C. Johnson ("Johnson") is President, Chief Executive Officer ("CEO"), and a director of the Company.

14.　　Defendant Andrew Langham ("Langham") is a director of the Company.

15.　　Defendants Egnotovich, Bianco, Chow, Fields, Gamache, Johnson and Langham are collectively referred to herein as the "Individual Defendants."

16.　　Defendants Welbilt and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company

17.　　Welbilt, Inc. became publicly traded in March 2016 after a spin-off from The Manitowoc Company, Inc. Welbilt is one of the world's leading commercial foodservice equipment companies with equipment capable of storing, cooking, holding, displaying, dispensing and serving in both hot and cold foodservice categories.

18.　　Welbilt designs, manufactures, and supplies equipment for the global commercial foodservice market used in restaurants, hotels, resorts, cruise ships, supermarkets, catering halls,

hospitals, schools, convenience stores and other institutions. Welbilt's portfolio of "award-winning product brands includes Cleveland™, Convotherm®, Crem®, Delfield®, Frymaster®, Garland®, Kolpak®, Lincoln™, Manitowoc® Ice, Merco®, Merrychef® and Multiplex®." These product brands are supported by three service brands: FitKitchen®, a fully-integrated kitchen systems business, KitchenConnect®, a digital cloud-based application offering, and KitchenCare®, an aftermarket parts and service business. Welbilt operates numerous manufacturing facilities globally.

**B. Background of the Sales Process Leading up to the Proposed Transaction**

19.     In the spring of 2020, "largely as a result of the COVID-19 pandemic and its impact on the kitchen equipment industry and broader restaurant and food services industries," Welbilt's stock price had declined significantly, closing at $3.50 per share on March 18, 2020 as compared to its closing price on November 4, 2019 of $19.79 per share. *See* Registration Statement (defined below) at 53.

20.     On June 19, 2020, the Board received an unsolicited written proposal from a financial sponsor, Party A, to acquire Welbilt for between $12.00 to $13.00 per share in cash.

21.     On July 24, 2020, the Board held a meeting to review management's strategic plan, including changes thereto in light of the COVID-19 pandemic.

22.     On July 31, 2020, the Board determined that Party A's proposal was not worth pursuing in light of "uncertainty resulting from the pandemic," and directed Morgan Stanley & Co. LLC ("Morgan Stanley") to inform Party A that Welbilt was not prepared to engage with Party A on the terms of the proposal received. *See* Registration Statement at 54.

23.     On August 6, 2020, the Board received a proposal from Party A to acquire Welbilt for $14.00 per share in cash.

24.     Over the next several days, the Board determined that Welbilt would be prepared to provide initial due diligence information to Party A if Party A offered $15.00 per share in cash, which message was conveyed to Party A.

25.     On August 14, 2020, the Board received a revised proposal from Party A to acquire Welbilt for $15.00 per share in cash.

26.     On August 20, 2020, Welbilt and Party A "executed a confidentiality agreement, after which Party A began to conduct due diligence on Welbilt." *See* Registration Statement at 54.

27.     On September 23, 2020, Welbilt entered into an amendment to its engagement letter with Morgan Stanley to provide for the engagement of Morgan Stanley as Welbilt's financial advisor in connection with a potential transaction.

28.     On October 1, 2020, Morgan Stanley received an unsolicited call from another financial sponsor, Party B, during which Party B stated they were aware Welbilt was in discussions with third parties regarding a potential strategic transaction.

29.     On October 5, 2020, Middleby provided a written proposal to the Board for an all-stock transaction valuing Welbilt common stock at $8.67 to $9.29 per share (with an implied exchange ratio of 0.0947 to 0.1015 shares of Middleby common stock for each share of Welbilt common stock).

30.     On October 13, 2020, Party A verbally submitted a revised proposal to acquire Welbilt for up to $15 per share, with a $13 per share cash portion and a publicly-traded contingent value right equal to $2 per share, subject to achievement of certain revenue thresholds. This proposal was subsequently submitted to the Board in a non-binding letter.

31.     On October 21, 2020, at the Board's direction, Defendant Egnotovich and representatives of Morgan Stanley informed Party A that its proposal was insufficient.

32.     Between October 22, 2020 and November 12, 2020, Defendants Egnotovich and Johnson and Morgan Stanley representatives held several calls with Party A, during which Party A verbally increased its offer incrementally. On November 9, 2020, Party A proposed a "best and final" all-cash offer of $13.80 per share. *See* Registration Statement at 57.

33.     In November 2020, the Board determined to continue discussing a potential transaction, including terms, with Party A.

34.     On November 30, 2020, Middleby submitted a revised written proposal acquire Welbilt in an all-stock transaction at a fixed exchange ratio of 0.1000, which implied pro forma ownership of the combined company of approximately 20% by Welbilt stockholders.

35.     Welbilt countered, and on December 7, 2020, Middleby submitted a revised written proposal with an exchange ratio of 0.1050, which implied pro forma ownership of the combined company of approximately 21% by Welbilt stockholders.

36.     On December 13, 2020, Welbilt and Middleby executed a "mutual confidentiality agreement that contained a standstill provision with customary fall-away provisions, after which the parties began to conduct mutual due diligence." *See* Registration Statement at 58.

37.     On December 22, 2020, Party A was sent a draft merger agreement at the direction of the Board.

38.     On January 5, 2021, Party C, a strategic company, made an unsolicited inquiry to Welbilt.

39.     On January 14, 2021, Middleby submitted a revised written proposal to Welbilt with an exchange ratio of 0.1180, which implied pro forma ownership of the post-closing combined company of approximately 23% by Welbilt's stockholders.

40.     Later that day, Welbilt's transaction committee, senior management team, and

financial and legal advisors held a meeting to discuss Middleby's proposal, noting that Party A's valuation no longer offered sufficient value to Welbilt's shareholders because Welbilt's stock price was trading higher than Party A's proposed price of $13.80 per share.

41.     On January 15, 2021, the Board instructed Defendant Egnotovich and Morgan Stanley to inform Party A that Welbilt would no longer engage in a transaction with Party A at the proposed $13.80 purchase price.

42.     On January 19, 2021, Defendants Egnotovich and Johnson relayed the Board's counteroffer to Middleby, consisting of "a proposed exchange ratio of 0.1285 (which implied pro forma ownership of the combined company of 75.3% by Middleby's stockholders and 24.7% by Welbilt's stockholders), proportionate representation on the combined company's board of directors and a proposed contractual framework that would provide a high degree of closing certainty in any merger agreement." *See* Registration Statement at 60.

43.     On January 22, 2021, Middleby submitted a revised proposal with an exchange ratio of 0.1240 (implying pro forma ownership of the combined company of 76% by Middleby's stockholders and 24% by Welbilt stockholders) and noting this was Middleby's "best and final" offer on value. *See* Registration Statement at 60.

44.     That same day, the Board decided to move forward with discussions with Middleby "with a view to seeking alignment on a framework that guaranteed a high degree of closing certainty, as well as post-closing board composition, prior to commencement of due diligence and negotiation of the definitive transaction agreement." *See Id*.

45.     On January 29, 2021, Defendants Egnotovich and Johnson called the CEO of Middleby to "confirm that Welbilt had preliminarily accepted, subject to ongoing due diligence and the negotiation of definitive agreements, Middleby's proposed exchange ratio and both parties

agreed to continue reciprocal due diligence in order to further refine each party's view of potential synergies and better understand the other's businesses." *Id.*

46.     On February 4, 2021, the Middleby board conveyed to Welbilt that it agreed Welbilt would have proportionate representation on the post-closing combined company's board of directors, which would result in Middleby expanding its board from seven to nine individuals with two Welbilt representatives serving on the combined company's board.

47.     Over the following weeks, Welbilt and Middleby negotiated the terms of a merger agreement.

48.     On April 11, 2021, the CEO of Middleby notified Defendants Egnotovich and Johnson that each had been "unanimously selected by the Middleby Board's nominating and corporate governance committee to serve on the combined company board of directors upon the Closing, which was subsequently disclosed to the Welbilt Board at the April 14, 2021 meeting." *See* Registration Statement at 63.

49.     Later that month, certain Welbilt stockholders affiliated with Carl C. Icahn (the "Icahn Stockholders") negotiated and exchanged markups with counsel for Middleby of an agreement to vote all of their Welbilt shares in favor of the Proposed Transaction (the "Icahn Support Agreement").

**C.  The Proposed Transaction**

50.     On April 20, 2021, Welbilt and Middleby executed the merger agreement. Further, Middleby and the Icahn Stockholders executed the Icahn Support Agreement.

51.     On April 21, 2021, Welbilt announced that it had signed a definitive merger agreement under which Middleby would acquire Welbilt in an all-stock transaction with Welbilt shareholders receiving a fixed exchange ratio of 0.1240 shares of Middleby common stock for

each share of Welbilt common stock held. The press release announcing the Proposed Transaction states, in pertinent part:

## The Middleby Corporation to Acquire Welbilt, Inc.

- Combination will create a premier food equipment company with a leading commercial foodservice portfolio
- Combined business is well positioned to deliver enhanced value for customers through complementary, best-in-class products, unmatched service and forward-thinking technology solutions
- Accelerates key investments in new product development, aftermarket capabilities, connectivity and digital solutions
- Expands international operations, particularly in higher-growth regions across the globe
- Clear path to driving $120 million in operational improvement with $100 million run-rate cost synergies and additional $20 million in Welbilt stand-alone Business Transformation Program annual improvement
- Immediately accretive to adjusted EPS with greater than 10% annual accretion by year two
- Equity consideration mix maintains the Middleby balance sheet flexibility and reserves capacity for future strategic investments in the business, M&A or stock buybacks

April 21, 2021 06:30 AM Eastern Daylight Time

ELGIN, Ill. & NEW PORT RICHEY, Fla.--(BUSINESS WIRE)--The Middleby Corporation (NASDAQ: MIDD) and Welbilt, Inc. (NYSE: WBT) have entered into a definitive agreement under which Middleby will acquire Welbilt in an all-stock transaction, enhancing the Middleby Commercial Foodservice platform with an attractive portfolio of products, brands and technologies. This transaction will bring together two complementary businesses, accelerate the Middleby growth strategy into key markets globally and increase core capabilities in highly attractive segments.

The combined company will have approximately $3.7 billion in combined 2020 sales, 73% of which will come from the Commercial Foodservice segment. With a strong balance sheet and robust cash generation, Middleby will be well positioned and capitalized to support significant R&D and future acquisition opportunities. Middleby has a long track record of successfully integrating businesses, having completed over 20 acquisitions since 2018, and has a history of driving efficiencies in acquired companies.

\*      \*      \*

<u>Transaction Structure</u>

Under the terms of the agreement, Welbilt shareholders will receive a fixed exchange ratio of 0.1240x shares of Middleby common stock for each share of Welbilt common stock in an all-stock transaction, with an implied enterprise value of $4.3 billion. Based on Middleby's volume-weighted average price during the 30 consecutive trading days ending April 20, 2021 (Middleby's 30-day VWAP), the offer price represents a 28% premium to Welbilt's 30-day VWAP. Upon closing, Middleby shareholders will own approximately 76 percent and Welbilt shareholders will own approximately 24 percent of the combined company on a fully diluted basis.

The Boards of both companies have unanimously approved the transaction. In addition, Carl C. Icahn (and affiliates), Welbilt's largest shareholder with an 8.4% ownership position, has entered into a support agreement in favor of the transaction.

<u>Governance and Management</u>

Following closing, Timothy FitzGerald will continue as CEO and as a member of the Middleby Board of Directors. Bryan Mittelman will continue to serve as Middleby's CFO. Middleby will expand its Board to include two new directors from the Welbilt board, Chairperson Cynthia Egnotovich and William Johnson.

<u>Financing and Expected Timing</u>

Middleby intends to refinance Welbilt's existing debt through its committed Senior Secured Facility. Based on the expected pro forma leverage ratio at closing, the interest on the incremental financing would be approximately L + 162.5 bps. The transaction is expected to close in late 2021, subject to customary closing conditions, including regulatory and Middleby and Welbilt shareholder approvals.

<u>Advisors</u>

Guggenheim Securities, LLC served as financial advisor to Middleby. Skadden, Arps, Slate, Meagher & Flom LLP served as legal counsel.

Morgan Stanley & Co. LLC served as financial advisor to Welbilt. Gibson, Dunn & Crutcher LLP served as legal counsel.

**D.     Subsequent Developments After the Proposed Transaction was Announced**

52.     On May 25, 2021, Welbilt received an "unsolicited written proposal from Ali

Holding S.r.l. ("Ali Group"), to acquire 100% of the outstanding Welbilt Common Stock in an all-cash transaction at a price of $23.00 per share (representing approximately $3.3 billion in aggregate equity value, on a fully diluted basis)[.]" *See* Registration Statement at 65.

53.     On May 28, 2021, the Ali Group confirmed that it had submitted an offer to acquire Welbilt for $23.00 per share in cash. According to the Ali Group's press release confirming its offer, Ali Group has "substantial cash on hand" and a "Highly Confident Letter from Goldman Sachs International for new financing to fund the proposed transaction." The Ali Group touted how its offer would not contain a financing condition, that such an offer would have less regulatory uncertainty than the Proposed Transaction with Middleby, and that "[its] advisors look forward to engaging with Welbilt and its advisors to quickly negotiate and finalize a definitive agreement." The press release states, in pertinent part:

### Ali Group Confirms Proposal to Acquire Welbilt

May 28, 2021 01:30 PM Eastern Daylight Time

CHICAGO--(BUSINESS WIRE)--In response to media reports, Ali Holding S.r.l. ("Ali Group"), one of the largest and most diversified global leaders in the foodservice equipment industry, today confirmed that on May 25, 2021, it submitted to the Board of Directors of Welbilt, Inc. (NYSE: WBT) a proposal under which Ali Group would acquire all of the outstanding shares of Welbilt common stock for $23.00 per share in cash. This proposal represents a premium of 47.2% to the Welbilt share price as of April 20, 2021, the last trading day prior to The Middleby Corporation's (NASDAQ: MIDD) announcement of its pending all-stock transaction with Welbilt, and a premium of approximately 13.9% to the implied value of the Middleby transaction as of May 24, 2021, the last trading day prior to Ali Group submitting its proposal to Welbilt.

Ali Group has substantial cash on hand and has received a Highly Confident Letter from Goldman Sachs International for new financing to fund the proposed transaction. Ali Group will obtain fully underwritten, binding commitment letters for any debt financing prior to signing a definitive merger agreement, which will not contain any financing condition. Ali Group is also highly confident its proposed transaction will obtain all necessary regulatory approvals in a timely manner without the uncertainty created by the antitrust provisions contained in the Middleby transaction.

Ali Group issued the following statement:

> Ali Group has a 60-year history in the foodservice equipment sector and has long-admired Welbilt. Our $23 per share proposal delivers significant cash premium value to Welbilt shareholders and is superior in every respect to Welbilt's pending all-stock transaction with Middleby. In addition to superior value, our proposal offers greater certainty of closing for Welbilt and its shareholders. We and our advisors look forward to engaging with Welbilt and its advisors to quickly negotiate and finalize a definitive agreement.

**Advisors**
Goldman Sachs & Co. LLC is serving as Ali Group's financial advisor, and Alston & Bird is acting as legal advisor.

**About Ali Group**
Founded in 1963, Ali Group is an Italian corporation with headquarters located in Milan, Italy and North American operations based in Chicago, Illinois. Through its subsidiaries, the company designs, manufactures, markets and services a broad line of commercial and institutional foodservice equipment used by major restaurant and hotel chains, independent restaurants, hospitals, schools, airports, correctional institutions and canteens.

Ali Group and its 80 global brands employ approximately 10,000 people in 30 countries and, in terms of sales, is one of the world's largest groups in this industry. It has 58 manufacturing facilities in 15 countries and sales and service subsidiaries throughout Europe, North America, South America, the Middle East and Asia Pacific.

For more information on Ali Group products and services, visit www.aligroup.com.

54.     That same day, the Board determined that Ali Group's proposal constitutes or is reasonably likely to constitute or result in a Company Superior Proposal. *See* Registration Statement at 65.

55.     On May 29, 2021, Welbilt and Ali Group executed a mutual confidentiality agreement and "clean team" addendum thereto, and Welbilt subsequently provided access to Ali Group to due diligence information. *See Id*.

56.     On June 9, 2021, the Company caused a Form S-4 Registration Statement to be

filed under the Securities Act of 1933 (the "Registration Statement") with the SEC in connection with the Proposed Transaction.

**E.  The Registration Statement Contains Materially False and Misleading Statements and Omissions**

57.     The Registration Statement, which recommends that Welbilt shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the sales process leading up to the Proposed Transaction; (ii) Middleby's and Welbilt's financial projections; (iii) the financial analyses performed by Welbilt's financial advisor, Morgan Stanley, in connection with its fairness opinion; and (iv) potential conflicts of interest involving Morgan Stanley.

58.     The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Welbilt Board and its Reasons for the Merger; (iii) Opinion of Welbilt's Financial Advisor; and (iv) Certain Unaudited Forecasted Financial Information.

59.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated July 21, 2021 shareholder vote on the Proposed Transaction, Welbilt shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.  Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

60.     The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

61.     First, the Registration Statement suggests that Parties B and C were interested in entering into a strategic transaction with Welbilt, but fails to disclose whether such parties entered

into a confidentiality or nondisclosure agreement with Welbilt, including whether such agreements contained standstill provisions with "don't ask, don't waive" ("DADW") provisions (including their time of enforcement) that would preclude such interested parties from making superior offers for Welbilt.

62.     Second, the Registration Statement fails to disclose all relevant terms of Party A's confidentiality agreement with Welbilt. The Registration Statement specifically notes that Welbilt and Middleby executed a "mutual confidentiality agreement that contained a standstill provision with customary fall-away provisions, after which the parties began to conduct mutual due diligence." *See* Registration Statement at 58. But the Registration Statement only summarily states that Welbilt and Party A "executed a confidentiality agreement" without specifying whether such agreement contained a standstill provision with customary fall-away provisions and/or DADW provisions (including their time of enforcement). *See Id*. at 54. The Registration Statement further fails to disclose whether there is any mechanism or document precluding Party A from submitting a higher offer. This information is material in light of the fact that Party A at one point had submitted the highest acquisition proposal for Welbilt.

63.     Third, additional information concerning the Ali Group's offer must be disclosed. In May 2021, the Ali Group publicly stated that it: (1) had submitted an offer to acquire Welbilt for $23.00 per share in cash; (2) had substantial cash and financing in place to fund a merger with Welbilt, which merger would not contain a financing condition; (3) would engage Welbilt to quickly negotiate and finalize a merger agreement; and (4) was highly confident such a merger would obtain all necessary regulatory approvals without the uncertainty created by the antitrust provisions contained in the Middleby transaction.

64.     The Registration Statement, however, fails to disclose material details concerning

negotiations with the Ali Group, including whether the Ali Group has since presented the Board with a superior offer and a description of the terms of the offer, including the merger consideration and financing and regulatory approval conditions.

65.     Without this information, Welbilt shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Welbilt shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

66.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Welbilt's and Middleby's Financial Projections

67.     The Registration Statement omits material information concerning Middleby's and Welbilt's financial projections.

68.     With respect to the Middleby forecasted financial information, the Registration Statement fails to disclose: (1) all line items underlying (i) Revenue, (ii) Adjusted EBITDA before and after stock-based compensation ("SBC"), (iii) EBITA, and (iv) Free Cash Flow; (2) Middleby's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.[1]

69.     With respect to the Welbilt forecasted financial information, the Registration Statement fails to disclose: (1) all line items underlying (i) Revenue, (ii) Adjusted EBITDA (burdened by SBC), and (iii) Unlevered Free Cash Flow; (2) Welbilt's GAAP operating income;

---

[1] Notably, "Adjusted EBITDA is defined as net income plus . . ." *See* Registration Statement at 97-98. Therefore, the net income projections exist.

and (3) a reconciliation of all non-GAAP to GAAP metrics.[2]

70.    With respect to each set of financial projections for Welbilt and Middleby, the underlying inputs and assumptions used to formulate such projections.

71.    The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and Middleby and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company and Middleby. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

72.    When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with

---

[2] "Adjusted EBITDA (burdened by SBC) is defined as GAAP operating income plus . . ." *See* Registration Statement at 99-100. Therefore, the GAAP operating income projections exist.

GAAP. 17 C.F.R. § 244.100.[3]

73.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Morgan Stanley's Analyses

74.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Morgan Stanley.

75.     The Registration Statement fails to disclose the following concerning Morgan Stanley's "*Welbilt Discounted Cash Flow Analysis*": (1) all line items underlying the unlevered free cash flows; (2) the terminal values for Welbilt; (3) the individual inputs and assumptions underlying the (i) discount rates ranging from 8.8% to 10.0%, and (ii) terminal growth rates of 2.5% to 3.5%; and (4) the fully diluted shares of Welbilt common stock.

76.     The Registration Statement fails to disclose the following concerning Morgan Stanley's "*Middleby Discounted Cash Flow Analysis*": (1) all line items underlying the unlevered free cash flows; (2) the terminal values for Middleby; (3) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.2% to 8.9%, and (ii) terminal growth rates of 2.5% to 3.5%; and (4) the fully diluted shares of Middleby common stock.

77.     The Registration Statement fails to disclose the following concerning Morgan Stanley's "*Welbilt Discounted Equity Value Analysis*": (1) the projected earnings per share used

---

[3] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited June 17, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

in the analysis; (2) Morgan Stanley's basis for applying the multiples used in the analysis; and (3) the individual inputs and assumptions underlying the 13.0% discount rate.

78.   The Registration Statement fails to disclose the following concerning Morgan Stanley's "*Middleby Discounted Equity Value Analysis*": (1) the projected earnings per share used in the analysis; (2) Morgan Stanley's basis for applying the multiples used in the analysis; and (3) the individual inputs and assumptions underlying the 9.0% discount rate.

79.   The Registration Statement fails to disclose the following concerning Morgan Stanley's "*Relative Discounted Analysts' Future Price Targets*" analysis: (1) the individual price targets observed by Morgan Stanley in its analysis; (2) the sources thereof; and (3) the individual inputs and assumptions underlying the discount rates applied.

80.   With respect to Morgan Stanley's "*Precedent Premia Analysis*," the Registration Statement fails to disclose the transactions observed in the analysis and premiums paid therein.

81.   The valuation methods, underlying assumptions, and key inputs used by Morgan Stanley in rendering its purported fairness opinion must be fairly disclosed to Welbilt shareholders. The description of Morgan Stanley's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Welbilt shareholders are unable to fully understand Morgan Stanley's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction.

82.   This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Potential Conflicts of Interest Involving Morgan Stanley

83.   The Registration Statement omits material information concerning potential

conflicts of interest involving Morgan Stanley.

84.     The Registration Statement fails to disclose the timing and nature of services Morgan Stanley and its affiliates provided Middleby and its affiliates within the past two years, including the amount of compensation Morgan Stanley received or expects to receive for providing such services.

85.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

86.     The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

87.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

88.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

89.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose

such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

90.     The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

91.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

92.     Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

<u>COUNT II</u>
**<u>Violations of Section 20(a) of the Exchange Act</u>**
**<u>Against the Individual Defendants</u>**

93.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

94.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

95.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

96.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

97.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

98.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

99.     As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 17, 2021                              Respectfully submitted,

                                                  **HALPER SADEH LLP**

                                                  By: /s/ Daniel Sadeh
                                                  Daniel Sadeh, Esq.

Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
      zhalper@halpersadeh.com

*Counsel for Plaintiff*